IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNIVERSAL NORTH AMERICA, | ) | |
| | ) | No. 2:11-cv-02381-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| MATTHEW J. FREY, | ) | |
| | ) | |
| Defendant. | ) | |

This is a declaratory judgment action in which plaintiff Universal North America (Universal) seeks a declaration that it does not owe insurance coverage or a duty to defend under a policy with its insured, Matthew J. Frey. Universal has filed a motion for summary judgment. For the reasons set forth below, the court grants Universal's motion.

## I. BACKGROUND

Eugene Marshall Burns, III filed suit on April 26, 2011 in the Court of Common Pleas for the Ninth Judicial Circuit against Frey. In his complaint, Burns avers as follows: In June 2009, he began work with Frey, the principal of CGM SC, LLC, a South Carolina trucking, warehousing, and logistics company. State Ct. Compl. ¶¶ 6, 7. In late 2010, Burns left the employ of CGM and started a competing business. Id. ¶¶ 11, 13. On December 13, 2010, Frey sent an email to 54 recipients entitled "Marshall Burns" that contains a number of false and defamatory statements regarding Burns. Id. ¶ 15. Burns brought a single cause of action against Frey for defamation.

Universal issued a homeowners insurance policy to Frey on February 22, 2010 that was effective for one year. Frey paid an additional premium for a Personal Injury Endorsement, which provides liability coverage and the costs of a defense for a claim

1

brought against an insured resulting from a covered "personal injury." The Endorsement defines "personal injury" in relevant part as:

> 4. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
>
> 5. Oral or written publication of material that violates a person's right of privacy.

Pl.'s Mot. Summ. J. Ex. A at 1. The Endorsement excludes coverage for "personal injury" that is:

> a. Caused by or at the direction of an "insured" with the knowledge that the act would violate the rights of another and would inflict "personal injury";
>
> . . . .
>
> f. Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an "insured"; [or]
>
> g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

Id.

## II. STANDARD

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v.

2

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255.

### III.   DISCUSSION

In South Carolina, "Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability." Owners Ins. Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005). Universal argues that coverage is excluded under "Exclusion a.," "Exclusion f.," and "Exclusion g." The court first considers "Exclusion f.," which omits coverage for "personal injury" that is "[s]ustained by any person as a result of an offense directly or indirectly related to the employment of this person by an 'insured.'" Pl.'s Mot. Summ. J. Ex. A at 1. To determine whether coverage is excluded, the court must look to the allegations of the underlying complaint. See Auto Owners Ins. Co. v. Personal Touch Med Spa, LLC, 763 F. Supp. 2d 769, 776 (D.S.C. 2011).

**A. "Personal injury"**

The Endorsement defines "personal injury" as "[o]ral or written publication of material that *slanders* or *libels* a person . . . or disparages a person's . . . goods, products or services." Pl.'s Mot. Summ. J. Ex. A at 1 (emphasis added). In South Carolina, "Libel and slander together constitute the tort of defamation." 20 S.C. Jur. Libel & Slander § 2. In the underlying complaint, Burns alleges that Frey made "false and defamatory statements regarding Burns" in the December 13, 2010 email. See State Ct. Compl. ¶¶

3

15, 18-24. For this reason, Universal has shown that the underlying complaint raises a claim for a covered "personal injury." Universal now must establish that Burns's suit is for personal injury that is excluded by "Exclusion f."

> **B. "Sustained by any person as a result of an offense directly or indirectly related to the employment of this person by an 'insured'"**

The next question is whether the defamation claim against Frey is excluded because the personal injury is alleged to be "sustained by [Burns] as a result of an offense directly or indirectly related to the employment of [Burns] by [Frey]."

The underlying complaint clearly alleges that the failed employment relationship between Burns and Frey was the catalyst behind the December 13, 2010 email containing the alleged defamatory statements. See State Ct. Compl. ¶ 11 ("In October 2010, Burns voluntarily left CGM's employ."); id. ¶ 13 ("On December 6, 2010, Burns, along with his wife, started a competing trucking, warehousing, and logistics business. Frey soon learned of Burns' competing business from a customer who received an e-mail from Burns soliciting the customer for Burns' competing business."); id. ¶ 14 ("After learning of Burns' competing business, on December 13, 2010, Frey sent to a number of Frey's and Burns' mutual friends, neighbors, business associates, and other acquaintances the e-mail message . . . ."); id. ¶ 15 ("The December 13 E-mail contains a number of false and defamatory statements regarding Burns, including . . . that Burns 'was recently let go' from CGM; . . . that Burns 'never brought any money to the company or accounts to add to it'; [and] that Burns was 'a failure' . . . ."). The state court complaint also attaches the December 13, 2010 email as an exhibit, and the first sentence of the email states, "As most if not all of you are aware, Marshall was employed by me at CGM and was recently let go." Id. Ex. A. All of this shows that absent the former employment relationship,

4

Frey would not have sent the alleged defamatory statements about Burns to Burns's friends and, more importantly for purposes of the exclusion, to his business associates.

Although the statements were made after the employment relationship terminated, courts applying similar exclusionary language have held that post-termination defamatory statements that provide an explanation for termination or are directed to the employee's performance are "related to" employment. See Parish of Christ Church v. Church Ins. Co., 166 F.3d 419, 421 (1st Cir. 1999) (applying an exclusion for "personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the named insured" because "[p]ost-termination defamations," such as those directed to a former employee's abilities, job performance, and reasons for termination, "can be directly or indirectly related to employment"). Such is the case here, as Frey's email concerns Burns's performance ("He . . . never brought any money to the company or accounts to add to it") and reasons for Burns's termination ("he was a failure"). State Ct. Compl. Ex. A. Other decisions have similarly found that post-termination defamations can directly or indirectly relate to the employment. See, e.g., Am. Alliance Ins. Co. v. 1212 Rest. Grp., L.L.C., 794 N.E.2d 892, 900 (Ill. Ct. App. 2003) ("Post[-]termination acts of defamation or other employment-related practices can reasonably arise directly and proximately from the termination."); Loyola Marymount Univ. v. Hartford Accident & Indem. Co., 271 Cal. Rptr. 528, 531 (Ct. App. 1990) ("'[D]irectly or indirectly related to the employment' does not mean, and cannot reasonably be construed to mean, 'committed during the employment.'").[1]

---

[1] Frey urges the court to apply a two-step analysis found in Owners Insurance Co. v. Clayton, 614 S.E.2d 611, 614 (S.C. 2005), which requires that a statement be made in the context of employment and describe the employee's performance. The exclusion at issue in Clayton precluded coverage for personal injury "*arising out of* any . . . defamation . . . or other

5

Even construing the exclusion narrowly and viewing the evidence in the light most favorable to Burns, the court finds that the underlying complaint asserts a claim for defamation, a covered personal injury, against Frey for an offense that directly or, at the least, indirectly resulted from Frey's employment of Burns.[2] Therefore, there is no coverage under the policy, and Universal is relieved from the duty to defend. See City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund, 677 S.E.2d 574, 578 (S.C. 2009) ("If the facts alleged in a complaint against an insured fail to bring a claim within policy coverage, an insurer has no duty to defend.").

## IV. CONCLUSION

Based on the foregoing, the court **GRANTS** plaintiff's motion for summary judgment.

**AND IT IS SO ORDERED**.

---

employment-related practices, policies, acts, or omissions." Id. (emphasis added). Courts in South Carolina interpret "arising out of" narrowly to mean "caused by." See id. (citing McPherson v. Mich. Mut. Ins. Co., 426 S.E.2d 770 (S.C. 1993)). The policy exclusion *sub judice* does not contain the words "arising out of," and, therefore, does not require the court to interpret it to mean "caused by." To the contrary, "Exclusion f." only requires that an offense be "directly or indirectly related" to the employment. In addition, in each of the cases relied on in Clayton to support the application of the two-step analysis, the "employment-related practices exclusion" at issue contained the "arising out of" language but did not include the pertinent language in the present case, i.e., "directly or indirectly related to the employment." See id. (citing HS Servs., Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642 (9th Cir. 1997); Adams v. Pro Sources, Inc., 231 F. Supp. 2d 499 (M.D. La. 2002); Frank & Freedus v. Allstate Ins. Co., 52 Cal. Rptr. 2d 678 (Ct. App. 1996)). Therefore, the court finds the Clayon test not entirely inapplicable.

[2] Universal also argues that coverage is excluded under "Exclusion a." and "Exclusion g." Because the court finds that "Exclusion f." applies, the court does not address the remaining exclusions.

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 27, 2012**
**Charleston, South Carolina**